1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------------x

3   UNITED STATES of AMERICA,

4             -against-                          19 Cr. 379
                                                 Plea
5
    DAVID WINNE,
6
                  Defendant.
7
    ------------------------------------x
8
9                                    United States Courthouse
                                     White Plains, New York
10
                                     May 23, 2019
11
12                     THE HONORABLE JUDITH C. McCARTHY,
                                     United States Magistrate Judge
13

14
    GEOFFREY S. BERMAN
15        United States Attorney for
          the Southern District of New York
16   BY:  JEFFREY C. COFFMAN
          JAMES McMAHON
17        Assistant United States Attorneys

18

19   MACHT & HARAN LLP
               Attorneys for David Winne
20   BY:  JEFFREY UDELL
          DIANA LEE
21

22

23

24

25

                    Angela O'Donnell, RPR, 914-390-4025

1              THE CLERK:  In the matter of United States of America

2    versus David Winne.

3              Counsel, please state your appearance for the record.

4              MR. COFFMAN:  Assistant United States Attorneys

5    Jeffrey Coffman and Jay McMahon with Special Agent Cynthia

6    Fraterrigo from the Food and Drug Administration, Office of

7    Criminal Investigations.  Good afternoon, your Honor.

8              THE COURT:  Good afternoon.

9              MR. UDELL:  Jeffrey Udell, Walden Macht & Haran for

10   Mr. Winne.  Good afternoon, your Honor.

11             THE COURT:  Good afternoon.

12             MS. LEE:  Diana Lee from Walden Macht & Haran for

13   Mr. Winne.

14             THE COURT:  Good afternoon, Ms. Lee.  Good afternoon,

15   Ms. Udell and good afternoon Winne.

16             THE DEFENDANT:  Good afternoon.

17             THE COURT:  Mr. Winne.  Apoligize.

18             Okay, Mr. Coffman, what are we here for?

19             MR. COFFMAN:  Your Honor, we're here for a change of

20   plea.

21             THE COURT:  Thank you.

22             Okay, Mr. Winne, if you could please stand.  I want

23   to advise you that this is not a trial.  It's my understanding

24   that you've decided to enter a guilty plea.  This proceeding is

25   for the purpose of ensuring that you are aware of your rights

1    in connection with your plea and that any waiver of those

2    rights is knowing and voluntary prior to entering your plea.

3              Mr. Winne, if at any time you do not understand what

4    I say to you or you do not hear what I say to you, please

5    interrupt me so that I can repeat and explain what I've said.

6    If you want to confer with your attorney regarding anything I

7    say, please interrupt me so that you can do that; do you

8    understand?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  I also want to advise you that you have

11   the right to be represented by counsel throughout the entire

12   case and you may consult with your attorney at any stage of

13   this proceeding.  You also have the right to remain silent.

14   Any statement that you do make may be used against you.  You

15   have this right to remain silent even if you've already made

16   statements to law enforcement officers; do you understand?

17             THE DEFENDANT:  Yes, your Honor.

18             THE COURT:  Ms. Hummel, could you please place

19   Mr. Winne under oath off affirmation.

20             (David Winne sworn)

21             THE COURT:  It's important for you to understand that

22   if you knowingly make a false statement during these

23   proceedings, you could be subject to prosecution for the crime

24   of perjury or for making a false statement to the Court and you

25   could face a punishment up to five years imprisonment and a

1    $250,000 fine for committing such a crime.  Such punishment

2    would be separate and apart from any sentence you may be facing

3    on the crime charged in the felony information; do you

4    understand that?

5                THE DEFENDANT:  Yes, your Honor.

6                THE COURT:  What is your full name?

7                THE DEFENDANT:  David Roy Winne.

8                THE COURT:  How old are you?

9                THE DEFENDANT:  Fifty-four.

10               THE COURT:  Are you a United States citizen?

11               THE DEFENDANT:  Yes, your Honor.

12               THE COURT:  How far did you go in school?

13               THE DEFENDANT:  Bachelor of science.

14               THE COURT:  Have you currently or have you been

15   recently under the care of a doctor or psychiatrist for any

16   reason?

17               THE DEFENDANT:  No, your Honor.

18               THE COURT:  Have you taken any mind-altering drugs,

19   medicines or pills or consumed any alcohol in the last 24

20   hours?

21               THE WITNESS:  No, your Honor.

22               THE COURT:  Have you ever been hospitalized or

23   treated for alcoholism or drug addiction?

24               THE DEFENDANT:  No, your Honor.

25               THE COURT:  Is your mind clear today?

1              THE DEFENDANT:  Yes, your Honor.

2              THE COURT:  Do you understand what's happening at

3    this proceeding?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  Does either counsel have any objection to

6    the defendant's competence to proceed at this time?

7              MR. COFFMAN:  No, your Honor.

8              MR. UDELL:  No, your Honor.

9              THE COURT:  Mr. Winne, this proceeding is called a

10   plea allocution.  I want you to understand that you have an

11   absolute right to have this plea allocution conducted before a

12   United States District Judge.  It is the District Judge who

13   will impose the sentence in this case.  If you consent, then I

14   will conduct the plea allocution and I will then make a report

15   to the District Judge in which I will recommend whether or not

16   the District Judge should accept the plea of guilty.  I will

17   make that recommendation based on the information that is

18   brought out during today's proceedings.

19             It is important for you to understand that the Court

20   will not accept your plea unless the Court is satisfied that

21   you fully understand all of your rights and that you are, in

22   fact, guilty; do you understand that?

23             THE DEFENDANT:  Yes, your Honor.

24             THE COURT:  Do you understand that you have an

25   absolute right to have this plea allocution conducted before a

```
1   United States District Judge?

2             THE DEFENDANT:  Yes, your Honor.

3             THE COURT:  Is it your wish that I conduct the plea

4   allocution?

5             THE DEFENDANT:  Yes, your Honor.

6             THE COURT:  Mr. Udell, did your client sign a consent

7   to proceed before a United States Magistrate Judge on a felony

8   plea allocution?

9             MR. UDELL:  He did, your Honor.  I've explained it to

10  him and he wishes to proceed before your Honor.

11            THE COURT:  Thank you.

12            Ms. Hummel, could you please have the defendant

13  identify his signature on the form?

14            THE CLERK:  Mr. Winne, I show you this consent to

15  proceed before a United States Magistrate Judge on a felony

16  plea allocution form which you've signed and dated today.

17  May 23, 2019.  Is that your signature?

18            THE DEFENDANT:  Yes.

19            THE CLERK:  Before signing this form, did you have a

20  chance to read it and review it with your attorney?

21            THE DEFENDANT:  Yes.

22            THE CLERK:  Thank you.

23            THE COURT:  So I have before me the consent to

24  proceed before a United States Magistrate Judge on a felony

25  plea allocution that you've signed, Mr. Winne.  What this form
```

1    says is that knowing you have the right to have this plea taken

2    by a United States District Judge, you're agreeing to have the

3    plea taken by me, a United States Magistrate Judge; is that

4    correct?

5         THE DEFENDANT:  Yes, your Honor.

6         THE COURT:  Before you signed the form, did your

7    lawyer explain it to you?

8         THE DEFENDANT:  Yes, your Honor.

9         THE COURT:  Did anyone threaten or coerce you or

10   promise you anything in order to get you to sign the consent

11   form?

12        THE DEFENDANT:  No, your Honor.

13        THE COURT:  Did you sign the form freely and

14   voluntarily?

15        THE DEFENDANT:  Yes, your Honor.

16        THE COURT:  Counsel, do either of you know of any

17   reason why the waiver and consent to proceed with this plea

18   allocution before a United States Magistrate Judge should not

19   be accepted?

20        MR. COFFMAN:  No, your Honor.

21        MR. UDELL:  No, your Honor.

22        THE COURT:  I find that the defendant, David Winne,

23   is fully competent and understands the proceeding before him.

24   I also find he's capable of waiving his right to appear before

25   a United States District Judge in order to enter his guilty

1  plea, and I therefore accept the consent form, which has been

2  signed and which is now part of the court record.  The consent

3  form will be marked as Court's Exhibit 1 and will remain in the

4  court file.

5          So, Mr. Winne, I've been informed that you wish to

6  change your plea and enter a plea of guilty as to certain

7  charges; is that correct?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  Before deciding whether to accept your

10  guilty plea, I'm going to ask you certain questions.  It's very

11  important you answer these questions honestly and completely.

12  The purpose of these proceedings is to make sure that you

13  understand your rights, to decide whether you're pleading

14  guilty of your own free will, and to make sure you're pleading

15  guilty because you are guilty and not for some other reason.

16          Do you understand what time saying?

17          THE DEFENDANT:  Yes, your Honor.

18          THE COURT:  If you don't understand any of the

19  questions, or if you want at any time to consult with your

20  lawyer, please say so, because it is important you understand

21  every question before you answer it; okay?

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:  So I have before me a copy of the

24  information containing the charges against you.  This

25  information is a two-count information.

1              Count One charges you with conspiracy to commit wire

2     fraud from in or about 1987 through in or about April 2017 in

3     violation of Title 18, United States Code, Sections 1349 and

4     1343.

5              Count Two charges you with wire fraud from in or

6     about 1987 to in or about April 2017 in violation of Title 18,

7     USC, Sections 1343 and 2.

8              Have you seen a copy of this information?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  Have you had an opportunity to read it?

11             THE DEFENDANT:  Yes, your Honor.

12             THE COURT:  Do you understand what it says?

13             THE DEFENDANT:  Yes, your Honor.

14             THE COURT:  Do you want me to read it in open court?

15             THE DEFENDANT:  No, your Honor.

16             THE COURT:  Have you had time to talk to your

17    attorney about these charges and about how you wish to plead?

18             THE DEFENDANT:  Yes, your Honor.

19             THE COURT:  Have you discussed with your attorney the

20    charges against you including the charges you intend to plead

21    guilty to as well as any other charges that the government may

22    have made in this case?

23             THE DEFENDANT:  Yes, your Honor.

24             THE COURT:  Has your attorney told you the

25    consequences of pleading guilty?

                     Angela O'Donnell, RPR, 914-390-4025

1           THE DEFENDANT:  Yes, your Honor.

2           THE COURT:  Are you satisfied with your attorney's

3    representation of you?

4           THE DEFENDANT:  Yes, your Honor.

5           THE COURT:  Have you told your attorney everything

6    you know about this case?

7           THE DEFENDANT:  Yes, your Honor.

8           THE COURT:  So who has the original plea agreement?

9           MR. COFFMAN:  I do, your Honor.

10          THE COURT:  Okay, Ms. Hummel could you get the

11   original plea agreement and have the defendant identify his

12   signature on the last page of the agreement?

13          The original plea agreement is going to be marked as

14   a government exhibit and will remain in the custody of the

15   Government's attorney.

16          THE CLERK:  Mr. Winne, I show you this plea agreement

17   which is dated April 16, 2019, and which you've signed and

18   dated today, May 23, 2019.  Is that your signature?

19          THE DEFENDANT:  Yes.

20          THE CLERK:  Before signing this agreement, did you

21   have a chance to read it and review it with your attorney?

22          THE DEFENDANT:  Yes.

23          THE CLERK:  Thank you.

24          THE COURT:  Mr. Udell, did you review each and every

25   part of this plea agreement with your client?

                 Angela O'Donnell, RPR, 914-390-4025

1          MR. UDELL:  I did, your Honor.

2          THE COURT:  Mr. Winne, are you satisfied you

3  understand this entire plea agreement which your lawyer has

4  reviewed with you?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  Do you have any questions for your lawyer

7  or for me about what this plea agreement says?

8          THE DEFENDANT:  No, your Honor.

9          THE COURT:  Does this plea agreement contain the

10  complete understanding between you and the government in

11  connection with this case?

12          THE DEFENDANT:  Yes, your Honor.

13          THE COURT:  Do you understand that anything which is

14  not set forth in the plea agreement or which is not told to me

15  at this time on the record will not be binding on the outcome

16  of your case?

17          THE DEFENDANT:  Yes, your Honor.

18          THE COURT:  And Mr. Coffman, is there anything beyond

19  the written plea agreement that the Court should be aware of?

20          MR. COFFMAN:  No, your Honor.

21          THE COURT:  Mr. Udell, is there any other agreement

22  the Court should know about?

23          MR. UDELL:  No, your Honor.

24          THE COURT:  Mr. Winne, did you sign the plea

25  agreement freely and voluntarily?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Did anyone force you or coerce you or

3   threaten you or promise you anything other than what is set

4   forth in the written plea agreement in order the get you to

5   sign the plea agreement?

6          THE DEFENDANT:  No, your Honor.

7          THE COURT:  So I want to go over certain aspects of

8   the plea agreement with you.

9          If you are convicted of the charges contained in

10  Count One of the felony information and that's the conspiracy

11  to commit wire fraud charge account, either after trial or by a

12  plea of guilty, you would be subject to a maximum sentence of

13  20 years imprisonment, a maximum term of three years supervised

14  release, a maximum fine pursuant to Title 18, United States

15  Code, Section 3571 of the greatest of $250,000, twice the gross

16  pecuniary gain derived from the offense or twice the gross

17  pecuniary loss to a person other than you as a result of the

18  offense and a mandatory $100 special assessment.  Do you

19  understand that?

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  If you are convicted of the charges

22  contained in this felony information, Count Two of it, which is

23  the count that charges you with wire fraud, if you are

24  convicted either after trial by plea of guilty you would be

25  subject on Count Two to a maximum sentence of 20 years

1  imprisonment, a maximum term of three years supervised release,

2  a maximum fine pursuant to Title 18, United States Code,

3  Section 3571 of the greatest of $250,000, twice the gross

4  pecuniary gain derived from the offense or twice the gross

5  pecuniary loss to a person other than you as a result of the

6  offense and a mandatory $100 special assessment; do you

7  understand that?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  Do you also understand that the total

10  maximum sentence of incarceration on the two counts together is

11  40 years imprisonment?

12          THE DEFENDANT:  Yes, your Honor.

13          THE COURT:  If you are sentenced to a term of

14  imprisonment, even if you are sentenced to the maximum term of

15  imprisonment, and if you are also sentenced to a term of

16  supervised release, and if you then violate the conditions of

17  supervised release, you could be sentenced to an additional

18  term of imprisonment for violating your conditions of

19  supervised release, which in this case would be an additional

20  term of up to three years; do you understand that?

21          THE DEFENDANT:  Yes, your Honor.

22          THE COURT:  In addition, if you violate the

23  conditions of your supervised release, you would not receive

24  credit for any time already served in prison or for time served

25  on supervised release; do you understand that?

1           THE DEFENDANT:  Yes, your Honor.

2           THE COURT:  You're also subject to the possibility of

3    an order of forfeiture or restitution.  Under this plea

4    agreement, Mr. Winne, you're agreeing to make restitution in an

5    amount to be specified by the Court.  You're also admitting to

6    the forfeiture allegation with respect to Count One and Two of

7    the information and agree to forfeit to the United States a sum

8    of money in US currency representing proceeds traceable to the

9    commission of these two offenses set forth in Count One and

10   Count Two; do you understand that?

11          THE DEFENDANT:  Yes, your Honor.

12          THE COURT:  Mr. Coffman, what's the maximum amount of

13   restitution and forfeiture that Mr. Winne is exposed to?

14          MR. COFFMAN:  Your Honor, by statute, there is no

15   maximum amount, and I do not have a precise estimate for the

16   amount of forfeiture in this case; however, we do know that the

17   revenue of AMA Laboratories in the relevant years was in excess

18   of $25 million.

19          THE COURT:  Okay, thank you.

20          Do you understand that, Mr. Winne, that they don't

21   know at this point what it is, but it's the proceeds of the

22   crime, and if the revenues were in excess of $25 million, you

23   could face a higher restitution amount or forfeiture amount?

24          Do you understand that?

25          THE DEFENDANT:  Yes, your Honor.

1                 THE COURT:  Okay.  Do you understand that these are

2    the possible sentences that could be imposed following a plea

3    of guilty in this matter?

4                 THE DEFENDANT:  Yes, your Honor.

5                 THE COURT:  I believe you mentioned that you are a US

6    citizen; is that correct?

7                 THE DEFENDANT:  Yes, your Honor.

8                 THE COURT:  Do you also understand that you are

9    pleading guilty to a felony offense and that such an

10   adjudication may deprive you of certain valuable civil rights,

11   which may include the right to vote, the right to hold public

12   office, the right to serve on a jury, the right to possess any

13   type of firearm, including rifles and shotguns, the right to be

14   considered for certain types of employment or to be bonded to

15   serve in the United States military and the right to possess or

16   obtain certain government issued licenses, including licenses

17   that may be required in certain professions and occupations?

18                 Do you understand that?

19                 THE DEFENDANT:  Yes, your Honor.

20                 THE COURT:  Do you understand that these are the

21   possible legal consequences of a guilty plea?

22                 THE DEFENDANT:  Yes, your Honor.

23                 THE COURT:  Do you understand that the United States

24   Sentencing Commission has issued guidelines for judges to

25   follow in determining the appropriate sentence in a criminal

                    Angela O'Donnell, RPR, 914-390-4025

1  case?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  Do you also understand these guidelines

4  are not mandatory but they must be considered by the Court

5  along with other factors listed at 18 U.S.C., section 3553 when

6  the judge determines the appropriate sentence to impose

7  including possible departures from the guidelines?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  I want to go over the plea agreement as

10  it relates to your cooperation.  I first want to ask if you and

11  your attorney have talked about how the sentencing guidelines

12  will be calculated in your case?

13          MR. UDELL:  May I have a moment, your Honor?

14          (Defense counsel and defendant confer)

15          THE DEFENDANT:  Yes, your Honor, we spoke about that.

16          THE COURT:  Okay, I want to go over the cooperation

17  agreement so you understand the terms of it and this plea

18  agreement.

19          Under this plea agreement you are agreeing to

20  truthfully and completely disclose all information with respect

21  to the activities of you and others concerning all matters by

22  which the US Attorney's office inquires of you and that

23  information can be used for any purpose; do you understand

24  that?

25          THE DEFENDANT:  Yes, your Honor.

                    Angela O'Donnell, RPR, 914-390-4025

1              THE COURT:  And you have to cooperate fully with the

2    US Attorney's office, the Federal Bureau of Investigation, the

3    Food and Drug Administration, Office of Criminal

4    Investigations; do you understand that?

5              THE DEFENDANT:  Yes, your Honor.

6              THE COURT:  And anyone else that the US Attorney's

7    office designates, law enforcement that they designate that you

8    have to speak to; do you understand that?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  You have to attend all the meetings that

11   they request your presence at, you have to provide the office

12   with any document or record or tangible evidence with which

13   they inquire of you, and you have to truthfully testify before

14   the grand jury and at any trial or court proceeding with

15   respect to any matters about which the US Attorney's office may

16   request your testimony; do you understand that?

17             THE DEFENDANT:  Yes, your Honor.

18             THE COURT:  You also have to bring to US Attorney's

19   office any crime which you've committed, any administrative,

20   civil or criminal proceedings, investigations or prosecutions

21   of which you've been a subject, target, party or witness; do

22   you understand that?

23             THE DEFENDANT:  Yes, your Honor.

24             THE COURT:  You also, of course, have to commit no

25   further crimes whatsoever; do you understand that?

Angela O'Donnell, RPR, 914-390-4025

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  If the US Attorney's office determines

3    that you have provided substantial assistance in an

4    investigation and prosecution, and if you fully complied with

5    the understanding specified in this plea agreement, the

6    US Attorney's office will file a motion pursuant to section

7    5K1.1 of the sentencing guidelines requesting the Court to

8    sentence you in light of the facts set forth in section

9    5K1.1(a)(1) through (5); do you understand that?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  If the office of the US Attorney

12   determines that you have not provided substantial assistance in

13   investigation and prosecution or that you have violated any

14   provision of the plea agreement, that determination will

15   release the US Attorney's office from any obligation to file a

16   motion pursuant to Section 5K1.1 of the sentencing guidelines

17   but will not entitle you to withdraw your guilty plea once it's

18   been entered; do you understand that?

19          THE DEFENDANT:  Yes, your Honor.

20          THE COURT:  Also, should the US Attorney's office

21   determine after they filed the motion pursuant to Section 5K1.1

22   of the Sentencing Guidelines and/or 18 U.S.C. Section 3553(e)

23   that you violated any provision of the plea agreement, the

24   US Attorney's office has the right to withdraw their motion; do

25   you understand that?

                Angela O'Donnell, RPR, 914-390-4025

1                    THE DEFENDANT:  Yes, your Honor.

2                    THE COURT:  That would not, however, give you the

3       right to withdraw your guilty plea once it's been entered; do

4       you understand that?

5                    THE DEFENDANT:  Yes, your Honor.

6                    THE COURT:  Do you understand that the District Judge

7       will consider the guidelines, will consider the motion made by

8       the US Attorney's office, if one is made, but will impose a

9       sentence in accordance with -- has the sole discretion in which

10      he is going to sentence you, and under the statute he can

11      sentence you up to 40 years in prison; do you understand that?

12                   THE DEFENDANT:  Yes, your Honor.

13                   THE COURT:  Do you understand the Court will not be

14      able to determine the appropriate sentence until after the

15      presentence report has been prepared and until you and your

16      attorney, as well as the government, have had an opportunity to

17      challenge the facts reported in the presentence report as well

18      as the calculation of the sentencing guideline range and any

19      sentence recommendation in that report?

20                   THE DEFENDANT:  Yes, your Honor.

21                   THE COURT:  Do you also understand that if there are

22      any objections to the presentence report, that those objections

23      will be ruled on by the Court, and if necessary, a hearing will

24      be held to determine what information is relevant to the

25      Court's determination of a sentence?

                    Angela O'Donnell, RPR, 914-390-4025

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  And under this agreement you're waiving

3     any and all right to withdraw your plea or attack your

4     conviction either on direct appeal or collaterally on the

5     ground that the government has failed to produce any discovery

6     material, Jencks Act material, exculpatory material pursuant to

7     *Brady versus Maryland*, other than information establishing your

8     factual innocence or impeachment material pursuant to *Giglio*

9     *versus United States* that has not already been produced as of

10    the date of the signing of this agreement?

11         THE DEFENDANT:  Yes, I understand, your Honor.

12         THE COURT:  Do you understand if you disagree with

13    the Court's sentencing decision, that will not give you a basis

14    for withdrawing your plea of guilty?

15         THE DEFENDANT:  Yes, your Honor.

16         THE COURT:  Do you also understand that parole has

17    been abolished, and if you are sentenced to a term of

18    imprisonment, you will not be eligible for early release on

19    parole?

20         THE DEFENDANT:  Yes, your Honor.

21         THE COURT:  Do you understand you do not have to

22    plead guilty and you have an absolute right to plead not guilty

23    and to have the matter go to trial by judge or by jury?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Do you understand that if you choose to

1    plead not guilty, you are entitled to a speedy and public trial

2    of your case?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  Do you understand at any trial of this

5    matter you would be entitled to the presumption of innocence

6    and that the presumption would remain with you until the

7    government proves each and every element of the crime charged

8    beyond a reasonable doubt to the satisfaction of a judge, if

9    it's a judge trial, or to the unanimous satisfaction of the

10   jury if it's a jury trial?

11             THE DEFENDANT:  Yes, your Honor.

12             THE COURT:  At such trial you would have the right,

13   with the assistance of your attorney, to confront and cross

14   examine the witnesses against you.  You would have the right to

15   call witnesses to testify for you and to have subpoenas issued

16   to compel witnesses to give testimony.  You would also have the

17   right to testify at your trial, but you could not be forced to

18   testify.  If you decide not to testify, your decision to remain

19   silent could not be held against you in any way.  Do you

20   understand all of that?

21             THE DEFENDANT:  Yes, your Honor.

22             THE COURT:  At your trial you'd also have the right,

23   which I've already mentioned, to the assistance of an attorney,

24   and to have an attorney appointed to represent you if you could

25   not afford counsel.

                Angela O'Donnell, RPR, 914-390-4025

1              Do you understand that if you plead guilty to the

2    charges in this felony information that you would give up your

3    right to a trial, and except for the right to counsel, you

4    would give up all the other rights which I've explained to you

5    here?

6              THE DEFENDANT:  Yes, your Honor.

7              THE COURT:  Counsel, is there anything else in the

8    plea agreement that you would like me to go over or highlight

9    for Mr. Winne?

10             MR. COFFMAN:  No, your Honor.

11             MR. UDELL:  No, your Honor.

12             THE COURT:  Thank you.

13             Mr. Winne, have you clearly heard and understood

14   everything I've said to you?

15             THE DEFENDANT:  Yes, your Honor.

16             THE COURT:  Do you have any questions for me or for

17   your attorney about anything I've said or anything I've asked

18   you?

19             THE DEFENDANT:  No, your Honor.

20             THE COURT:  You can be seated.

21             You can proceed, Mr. Coffman.  Can you tell me what

22   the elements of the offense are and what is the government

23   prepared to prove at trial in order to establish those

24   elements.

25             MR. COFFMAN:  Your Honor, if this matter proceeded to

1  trial, the government would prove the following two elements

2  beyond a reasonable doubt with respect to Count One, conspiracy

3  to commit wire fraud:

4        First, that there was an unlawful agreement between

5  two or more people, the unlawful object of the agreement being

6  to commit wire fraud; and

7        Second, that the defendant knowingly and willfully

8  entered into that agreement.

9        For Count One, the government would not have to prove

10  that the substantive crime of wire fraud was, in fact,

11  committed but rather it was the object of the conspiracy.

12  Nevertheless, I set forth the elements of the wire fraud now

13  because it's the object of the offense charged in Count One,

14  also because these are the elements the government would prove

15  beyond a reasonable doubt with respect to Count Two, the

16  substantive wire fraud count, and there are three elements to

17  the wire fraud offense:

18        First, that the defendant executed a scheme or

19  artifice to defraud or to obtain money or property by

20  materially false pretenses, representations or promises;

21        Second, that the defendant knowingly and willfully

22  participated in a scheme or artifice to defraud with knowledge

23  of its fraudulent nature and with specific intent to defraud;

24  and

25        Third, that there was the use of interstate wires in

1    furtherance of the fraud.

2            The government would also prove by a preponderance of

3    the evidence that venue in the Southern District of New York is

4    proper.

5            Specifically, the government would prove at trial

6    beyond a reasonable doubt that beginning in 1987 and continuing

7    to April 2017, the defendant willfully and knowingly conspired

8    with others to commit wire fraud and committed wire fraud.

9            The government would prove that the defendant was a

10   technical director of AMA Laboratories in Rockland County,

11   New York.  AMA tested the efficacy and safety of cosmetics,

12   sunscreens and other products on specified numbers and

13   volunteer panelists in exchange for fees paid by consumer

14   products companies.  From at least 1987 through April 2017, the

15   defendant and other employees of the laboratory tested products

16   on materially lower numbers of panelists than the number

17   specified by the laboratory's customers.  The defendant and

18   other laboratory employees then falsely represented to the

19   laboratory's customers that they had tested the products on the

20   number of panelists specified by the laboratory's customers.

21           The defendant and other laboratory employees also

22   made materially false and misleading statements about the

23   results of the tests to the laboratory's customers.

24           The defendant and other laboratory employees

25   initially sent the laboratory's reports containing the false

1    information to the laboratory's customers via interstate

2    facsimile and more recently sent them via email communications

3    interstate.

4          The governments evidence would include documentary

5    evidence including email communications with victims and

6    fraudulent reports and panelist data seized from the premises

7    of AMA.  It would include testimony from other AMA employees

8    regarding the practices of AMA described previously.  It would

9    include testimony from victim companies and it would include

10   the defendant's statements.

11         The Government's evidence as to venue would include

12   that AMA and the defendant were physically located in and

13   operated from New City in Rockland County in the Southern

14   District of New York.

15         THE COURT:  Thank you, Mr. Coffman.

16         THE COURT:  Okay, Mr. Winne, can you stand.

17         I just want to know, did you hear what Assistant

18   US Attorney Coffman just said?

19         THE DEFENDANT:  Yes, your Honor.

20         THE COURT:  Okay.  So at this time, how do you wish

21   to plead to the charges?

22         THE DEFENDANT:  Guilty as charged, your Honor.

23         THE COURT:  Has anyone threatened you or coerce you

24   or pressured you improperly in order to get you to plead guilty

25   to these charges?

1              THE DEFENDANT:  No, your Honor.

2              THE COURT:  Has anyone made any promises to you in

3    order to induce you to plead guilty?

4              THE DEFENDANT:  No, your Honor.

5              THE COURT:  Has anyone made any specific promises to

6    you about what the sentence of the Court will be?

7              THE DEFENDANT:  No, your Honor.

8              THE COURT:  Can you tell me in your own words what

9    you did to commit this crime, these crimes?

10             THE DEFENDANT:  Yes, your Honor.

11             At all times mentioned in the information from at

12   least 1987 through April of 2017, I was employed by AMA

13   Laboratories Inc. in Rockland County.  AMA is a for-profit

14   company that is hired by other companies who sell cosmetics,

15   sunscreens and similar products.  These other companies who are

16   AMA customers engaged AMA to run tests on the customer's

17   products to determine whether those products are safe and

18   effective, and AMA does so through the use of volunteer panels

19   recruited by AMA to take part in the tests in AMA laboratories.

20   For most of my time at AMA I was the company's technical

21   director.

22             When AMA would run these tests on the customers'

23   products through the use of volunteer panels, it was supposed

24   to inform its customers via written report how many panelists

25   took part in the testing, along with the results of the tests.

Angela O'Donnell, RPR, 914-390-4025

1          In the 1980s and 1990s, these reports were typically

2     faxed to the customers, while in more recent years the reports

3     were emailed.  Many of these faxes and emails were sent to

4     customers outside of the State of New York.

5          Contrary to what was represented to AMA's customers

6     in the fax and emailed reports, AMA would typically use far

7     fewer panelists to perform the tests than the number of

8     panelists required by the customers and claimed to be used by

9     AMA in the written reports.  In other words, AMA regularly used

10    an insufficient number of panelists to perform the tests and

11    then regularly misrepresented to its customers in the fax and

12    email reports how many panelists were used.

13         While I did not directly supervise the conducting of

14    the test as the company's technical director, I was aware of

15    the company's routine practice of shorting panelists and I

16    often caused the written reports to be transported via

17    facsimile or email knowing that they falsely and deceptively

18    overstated the number of panelists actually used by AMA to

19    conduct the tests.

20         I take full responsibility for my wrongful conduct.

21    I'm ashamed of my actions.  I apoligize to the Court and the

22    victims for what I've done, and to my colleagues in the

23    industry and the customers of AMA.

24         THE COURT:  Thank you.

25         Did you commit these acts knowingly and willfully?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Did you know it was against the law to do

3     what you were doing?

4          THE DEFENDANT:  Not necessarily, your Honor.  Not

5     necessarily a federal crime.  I knew it was wrong.  I did know

6     it was wrong.

7          THE COURT:  And it was illegal.

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  Is there anything else which either

10    counsel believes the Court needs to elicit from the defendant

11    before making the recommendation contemplated by Rule 11 of the

12    Federal Rules of Criminal Procedure?

13         MR. COFFMAN:  Not the from the government, your

14    Honor.

15         MR. UDELL:  No, your Honor.

16         THE COURT:  Thank you.

17         THE COURT:  Mr. Udell, do you know of any reason why

18    the Court should not recommend acceptance of your client's plea

19    of guilty in this matter?

20         MR. UDELL:  I don't, your Honor.

21         THE COURT:  Mr. Coffman, do you know any reason why

22    the Court should not recommend acceptance of the plea?

23         MR. COFFMAN:  No, your Honor.

24         THE COURT:  Mr. Winne, in light of everything that's

25    been said here today, is it still your wish to plead guilty to

1    the charge contained in the felony information?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  On the basis of the allocution and the

4    responses to my questions, I find the defendant is fully

5    competent and capable of entering an informed plea.

6              I am satisfied, Mr. Winne, that you understand your

7    rights, including your right to go to trial, that you're aware

8    of the consequences of your plea, including the sentence that

9    may be imposed.  Based on this plea allocution, I find the plea

10   is knowing and voluntary and is supported by an independent

11   factual basis for each and every element of the crime charged.

12             Accordingly, I respectfully report and recommend to

13   Judge Briccetti that the plea be accepted and the defendant be

14   adjudged guilty of the offenses charged in the felony

15   information.

16             I'm going to direct that a presentence investigation

17   be conducted by the United States Department of Probation and

18   that a presentence report be prepared.

19             I understand that this is a cooperation agreement and

20   the timing of these reports may be different than what the

21   standing order is, but I'm going to impose the standing order

22   in this case which requires that within 14 days from today,

23   Mr. Winne, you need to meet with the Department of Probation,

24   your attorney can accompany you there, for an interview.  And

25   what I want to make sure you understand is whether you do it

1  within two weeks or if that gets adjourned, at the time of that

2  interview you have to be fully honest and truthful during that

3  interview, because if it comes to Court's attention that you've

4  provided false, incomplete or misleading information, that may

5  be held against you at time of sentencing; do you understand

6  that?

7        THE DEFENDANT:  Yes, your Honor.

8        THE COURT:  And Mr. Coffman, the prosecution case

9  summary for purposes of the presentence report is to be

10  delivered to the Probation Department no later than 13 days

11  from today.  Today is May 23rd, so that is June 6, 2019.

12  Again, because this is a cooperation agreement, if the parties

13  need additional times for either of this, or there's no reason

14  to do it at this time, please make that request to Judge

15  Briccetti.  Otherwise they're to interview and the report is

16  due by June 6, 2019.

17        I'm going to ask the court reporter provide a

18  transcript of these proceedings been 30 days setting forth my

19  report and recommendation to Judge Briccetti and the transcript

20  is to come to me first for review

21        Since you've pled guilty to a cooperation agreement,

22  Judge Briccetti has not set a sentencing date yet; however, he

23  has set a control date of November 29, 2019, for the parties to

24  submit a letter with respect to the defendant's cooperation.

25  Okay?

Angela O'Donnell, RPR, 914-390-4025

1           MR. COFFMAN:  Thank you, your Honor.

2           THE COURT:  And please follow up with Judge

3    Briccetti's chambers to confirm that date.  Okay?

4           Anything else from either side?

5           MR. UDELL:  No, your Honor.

6           MR. COFFMAN:  No.  Thank you for making time, your

7    Honor.

8           THE COURT:  Thank you very much, counsel.

9           Mr. Winne, good luck to you.

10          Have a good day everyone.

11          (Proceedings concluded)

12   CERTIFICATE:  I hereby certify that the foregoing is a true and
     accurate transcript, to the best of my skill and ability, from
13   my stenographic notes of this proceeding.
                    ------------------------------------
14   Angela A. O'Donnell, RPR,Official Court Reporter, USDC, SDNY

15

16

17

18

19

20

21

22

23

24

25

                    Angela O'Donnell, RPR, 914-390-4025